# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CORDELL FORD,**

    Plaintiff,

    v.                                           Case No. 19-CV-1005

**ANTHONY MATUSHAK and**
**SHANE GARLAND,**

    Defendants.

## ORDER

Plaintiff Cordell Ford is representing himself in this § 1983 case. On October 7, 2019, the defendants filed a motion for summary judgment on the ground that Ford failed to exhaust the available administrative remedies before he filed this lawsuit. In the course of deciding that motion the court noticed a discrepancy in one of the supporting documents filed by the parties. The court asked the defendants to supplement their motion to address the discrepancy.

In their supplemental materials the defendants argued that Ford fabricated a document in order to support his assertion that he had exhausted his administrative remedies. Ford denied fabricating the document. The court ordered that an evidentiary hearing was necessary to assess the parties' credibility. The scheduling of the hearing was delayed due to the ongoing pandemic. The hearing occurred by Zoom videoconference on June 30, 2020.

**Ford's Inmate Complaint**

The document at issue is an inmate complaint Ford states he submitted on December 28, 2018. The defendants initially argued that Ford had not exhausted the available administrative remedies before filing this lawsuit because he had not filed *any* inmate complaints about the incidents at issue in this case. (*See* ECF No. 35 at 2.)

Ford argued that the defendants were wrong. He explained that the first two inmate complaints he filed never reached the inmate complaint examiner. (ECF No. 41 at 2-3.) He stated that, on December 28, 2018, he filed a third inmate complaint, which stated:

> I want to make the complaint again cuz I don't think it was placed (12-1-18) CO Matushak threw a glass case in my cell containing glasses and a pair of headphones and told me to get it over with, so he can fuck my dead corp[se], put a rubberband on my trap latch.
>
> And when I was taken out to HSU I don't remember the nurse name but even though clearly I was unstable the nurse said he wouldn't take the piece of glasses that was in my arm out he made me take the glasses piece out of my arm didn't give me no pain medicine and my arm been hurting ever since.

(ECF No. 41 at 4 (quoting ECF No. 44-1 at 3, 5).)

According to Ford, on January 3, 2019, inmate complaint examiner Jodi Perttu returned to him his December 28 inmate complaint and another unrelated inmate complaint with a letter explaining that the rules allow him to file only one inmate complaint per week. (ECF No. 41 at 4-5.) Ford explained that he "wasn't able to refile his complaints because unbeknownst to him the entire Wisconsin Administrative

2

Codes DOC 310 inmate complaint procedures had been revised and he had no way of knowing what steps he must comply with under the new system of grievance procedures." (*Id.* at 6.)

Following Ford's response to their motion, the defendants explained that Ford had *tried* to file two inmate complaints on December 28, one of which was about the incidents at issue in this case. They attached copies of the two inmate complaints. (ECF No. 47-1 at 2-3.) They noted that, as Ford had acknowledged, Perttu returned both inmate complaints to Ford *unfiled* because the rules allow inmates to file only one inmate complaint per week. (ECF No. 48 at 2.) In the letter Perttu sent to Ford, she instructed: "Please choose which of the two complaints you wish to submit this calendar week." (*Id.* (citing ECF No. 44-1 at 9).) According to the defendants, Ford did not resubmit either inmate complaint. (*Id.* at 2.)

In reviewing the parties' filings the court noted that the December 28 inmate complaint the defendants submitted differed from the December 28 inmate complaint Ford submitted. (ECF No. 49 at 9-10 (*comparing* ECF Nos. 47-1 at 2 and 44-1 at 3, 5).) Specifically, the inmate complaint the defendants submitted was a single page, only addressed Ford's allegations against defendant Anthony Matushak, and concluded with "Please & Thank you." (*Id.*) The inmate complaint that Ford submitted had two pages. The first page was identical to the one-page complaint submitted by the defendants except that "Please & Thank you" was scribbled out, and the second page included allegations against defendant Shane Garland. (*Id.*)

3

After the court pointed out the discrepancy, the defendants argued that Ford had doctored the December 28 inmate complaint to include allegations about Garland in order to save his claim against Garland. They asserted that Ford crossed out "Please & Thank you" and fabricated the second page. (ECF No. 53.) Ford denied doing so. He asserted that he had "submitted exact identical copies of the inmate complaints he properly filed against the defendants Matushak and Garland." (ECF No. 55 at 2.) He explained that the

> …scribbling out of please and thank you of his copy of his inmate complaint wasn't done in an attempt to bolster his argument that he properly exhausted his administrative remedies…but in actuality Ford never expected to have to use the documents to have to prove he properly exhausted his administrative remedies because it never crossed his mind that the defendants [would] falsely claim and perjure themselves before the court by boldly claiming that plaintiff never filed a single complaint…. Plaintiff Ford signing off "please and thank you" was not a conclusion for his first complaint but a conclusion to the portion of his complaint about defendant Matushak.

(ECF No. 55 at 2-3.)

Ford further asserted that he "was certain that the defendants had copies of his inmate complaint about Matushak and Garland and believe[d] that Jodene Perttu ha[d] either lost or misplaced his second complaint page or simply forgot to scan the second page of the complaint." (ECF No. 55 at 3.) Ford insisted that "the second page of his complaint was part of the original complaint…" and that he "ha[d] provided this court with the exact documents that he submitted on Dec 28th 2018 and what was returned back to him unfiled by inmate complaint examiner Jodene Perttu." (*Id.* at 4, 5.)

4

**The Evidentiary Hearing**

Given the conflicting accounts regarding the December 28 inmate complaint, the court decided an evidentiary hearing was required to assess the parties' credibility. The court held an evidentiary hearing via Zoom videoconference on June 30, 2020. There were two main witnesses: inmate complaint examiner Perttu and Ford. Another inmate who has been helping Ford with this case also briefly testified, but he had no personal knowledge of Ford preparing or submitting the December 28 inmate complaint.

Perttu testified that, when an inmate submits an inmate complaint, the inmate complaint examiner scans all pages of the document and enters them into the inmate complaint review system (ICRS). In the event an inmate complaint examiner rejects an inmate complaint, the document is scanned into ICRS and the original document is returned to the inmate with a letter from the inmate complaint examiner explaining why the inmate complaint is being returned. Perttu explained that, once a document is scanned into the system, she cannot alter the document in any way.

At the hearing Ford's explanation for why his copy of the December 28 inmate complaint differed from the defendants' copy was different from the explanation he had given in his written submissions. In his written submissions, Ford asserted that "the second page of his complaint was part of the original complaint…" and that he "ha[d] provided this court with the exact documents that he submitted on Dec 28th 2018 and what was returned back to him unfiled by inmate complaint examiner Jodene Perttu." (ECF No. 55 at 4, 5.) However, at the hearing Ford testified that,

5

after he received Perttu's letter returning the two inmate complaints, instructing him to resubmit the one he wanted to proceed with, he decided to resubmit the complaint about Matushak. He further testified that, rather than simply resubmitting the inmate complaint, he decided to add allegations about Garland, which is why he scribbled out "Please & Thank you" and added a second page.

Perttu testified that there is no record of Ford resubmitting his December 28 inmate complaint after she returned the original to him on January 3. Ford provided no details about when or how he resubmitted the December 28 inmate complaint. He merely implied that it must have been intercepted like the other inmate complaints he had tried to submit.

**Findings of Fact**

The court finds by clear and convincing evidence that Ford filed a doctored document to mislead the court and further lied under oath at the evidentiary hearing in an attempt to avoid the consequences of his actions. The court bases this finding on Perttu's testimony about how she handles inmate complaints, particularly those that are rejected and returned to the inmate. The court found her testimony about the process of scanning an inmate complaint into the ICRS, mailing the original back to the inmate, and writing a letter to the inmate to explain why the inmate complaint was being rejected to be credible and supported by the documentary evidence.

The court did not, however, find Ford's testimony to be credible. The defendants originally stated in their motion for summary judgment that Ford had not filed any inmate complaints about the incidents at issue in this case. In his response

6

to their motion, Ford accused the defendants of misleading the court and attached an inmate complaint he claimed he had submitted on December 28, 2018. In his response to their motion, Ford made no mention of having resubmitted the inmate complaint after it was rejected by Perttu.

In their reply and supplemental briefs the defendants clarified that Ford had not filed any inmate complaints on December 28. Instead, he had only attempted to file two inmate complaints. However, Perttu rejected the December 28 inmate complaints, returned them to Ford *unfiled*, and instructed Ford to choose which one he wanted to file. In response to the defendants' supplemental brief, Ford once again made no mention of having resubmitted the December 28 inmate complaint (with additions) after Perttu rejected it. In fact, Ford insisted that "the second page of his complaint was part of the original complaint…" and that he "ha[d] provided this court with the exact documents that he submitted on Dec 28th 2018 and what was returned back to him unfiled by inmate complaint examiner Jodene Perttu." (ECF No. 55 at 4, 5.)

It was not until the hearing that Ford first raised the explanation that his copy of the inmate complaint differed from the defendants' copy because Ford had decided to add to the original inmate complaint and then resubmit it as Perttu had instructed in her January 3 letter. While Ford's current version makes sense of the differences between the two inmate complaints, this version, inconsistent with his prior sworn statement about his submission of both pages on December 28, is simply not credible.

7

The court found Ford to be organized in his thinking and more than capable of recalling facts and presenting his arguments. His answers to defense counsel's questions were clear and succinct, and his questioning of Perttu was focused and on point. Although Ford has characterized himself as "mentally ill or seriously mentally ill" (*see* ECF No. 44 at ¶2), the court saw no evidence of that in the course of the hearing. Ford was rational, coherent, and in control of his faculties and the facts of this case. Accordingly, the court cannot believe that, if Ford's most recent version were true, Ford would not have presented it as his initial explanation for why there were two pages to the subject exhibit.

At the hearing Ford read from a letter (that is not part of the record) from the deputy warden denying his appeal of Perttu's rejection. Ford asserted that this letter establishes that he resubmitted the inmate complaint as Perttu instructed. But at most the letter establishes that, after Perttu rejected his inmate complaint and returned it to him, he appealed her decision to the deputy warden. It does not establish that he resubmitted the inmate complaint, with the additional page, to Perttu as she instructed.

In short, the court finds that Ford manufactured false and fraudulent evidence in the form of a doctored inmate complaint in an effort to salvage his claim against Garland. The court also finds that Ford lied about the fabricated evidence under oath.

**The Remedy**

The Court has the inherent power to sanction a party's misconduct. *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 739 (7th Cir. 2009). "Sanctions meted out

8

pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Id*. Fed. R. Civ. Pro. 11(c) also empowers courts to sanction a party who files a pleading or other paper for an improper purpose. Manufacturing evidence and lying under oath undermine the essential truth-finding function of our system of justice. It also puts the judicial system through unnecessary work and causes the defendants unnecessary expense and delay. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014).

Further, under 28 U.S.C. § 1915(e)(2) a court "shall" dismiss a case at any time if the court determines that the case is malicious. As U.S. District Judge William Griesbach observed in a different case with similar circumstances, "It is hard for the Court to conceive of misconduct more malicious than fabricating allegations and evidence. [The plaintiff] has manufactured evidence to defraud the Court, the defendants, and ultimately, the taxpayers of the State of Wisconsin. His fraudulent behavior has resulted in the court diverting significant time and resources from legitimate cases." *Goodvine v. VandeWalle*, Case No. 16-C-890, 2018 WL 460121 at *10 (E.D. Wis. Jan. 17, 2018).

Based on my finding that Ford fabricated evidence and then lied about it under oath, the court finds that the extreme sanction of dismissal with prejudice is warranted. The court also finds that Ford must be assessed a strike under 28 U.S.C. § 1915(g). *See Goodvine*, 2018 WL 460121 at *10; *see Lindsey v. Brown*, Case No. 13-cv-68, 2013 WL 5148347 at *2 (S.D. Ind. Sept. 11, 2013).

**IT IS THEREFORE ORDERED** that the defendants' request that the court dismiss this case as a sanction for Ford falsifying documents (ECF No. 53) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 34) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice**. The clerk's office shall document that Ford has been assessed a strike under 28 U.S.C. § 1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 6th day of July, 2020.

**BY THE COURT:**

WILLIAM E. DUFFIN
U.S. Magistrate Judge